IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONALD CHERRY PLAINTIFF

v. Case No. 4:25-cv-4023

JOHN VAN METER, In His Individual and Official Capacities as Police Officer (retired) with Texarkana, Arkansas Police Department; CHRISTINE KNOUSE, In Her Individual and Official Capacities as Police Officer with Texarkana, Arkansas Police Department; MARCOS LUNA, In His Individual and Official Capacities as Police Officer with Texarkana, Arkansas Police Department; and MUNICIPAL CITY OF TEXARKANA, ARKANSAS DEFENDANTS

**ORDER**

Before the Court is the Report and Recommendation filed by the Honorable Spencer G. Singleton, United States Magistrate Judge for the Western District of Arkansas. ECF No. 114. Judge Singleton recommends that the Court grant Defendants' Motion for Summary Judgment (ECF No. 90) and dismiss all claims in this case. Plaintiff has filed objections to the Report and Recommendation. ECF No. 115. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

Plaintiff, representing himself in this matter, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights and committed acts of negligence, assault, and battery. Plaintiff alleges claims against Defendants John Van Meter, Christine Knouse, and Marcos Luna, who are all Texarkana Arkansas Police Department ("TAPD") police officers, in both their individual and official capacities. Plaintiff also alleges claims against the City of Texarkana, Arkansas.

The incident giving rise to this lawsuit occurred on April 10, 2022, at approximately 2:30

a.m., when Plaintiff was parked at the food delivery window at Whataburger for more than ten minutes.[1] Plaintiff was dissatisfied with his order and refused to leave the food delivery window. A Whataburger employee flagged down Defendant Christine Knouse, a TAPD police officer, and told Officer Knouse that Plaintiff was refusing to leave after being asked to do so. As Officer Knouse approached Plaintiff's vehicle, a Whataburger employee told her to instruct Plaintiff to leave. Speaking to Plaintiff through his closed vehicle window, Officer Knouse told him that the Whataburger employee had asked him to leave, and Officer Knouse asked Plaintiff several times to move his vehicle. Plaintiff told Officer Knouse that he was not going to move because he had an issue with his food order. He repeatedly refused Officer Knouse's directions to move his vehicle, and he refused to provide his name when asked. Officer Knouse requested back-up assistance.

While Plaintiff was still parked in the Whataburger drive-through line, Defendants Marcos Luna and John Van Meter, TAPD police officers, arrived at the scene. Officer Van Meter approached Plaintiff's vehicle and instructed Plaintiff to exit the vehicle to have a discussion. Plaintiff refused. Officer Van Meter repeated this request two more times, and Plaintiff responded that he could not exit the vehicle because of an issue with his knee and because there was not enough space between his vehicle and Whataburger's outer wall.

Officer Van Meter then told Plaintiff four times to unlock his door, warning Plaintiff that his window would be broken if he did not comply. Plaintiff refused. Officer Van Meter then struck the window of the front driver's side door with his baton and broke the glass. Officer Van Meter requested pepper spray as a warning to Plaintiff to exit the vehicle. Officer Luna approached Plaintiff's vehicle with pepper spray. Plaintiff then unlocked his door, and Officer

[1]The Court notes that the entire incident involving the use of force was recorded by the bodycam cameras of Knouse and Van Meter and Knouse's dashboard camera. For the most part, the facts are derived from these bodycam and dashboard videos.

Van Meter opened it.

Officer Van Meter informed Plaintiff that he was under arrest and directed him to exit the vehicle. Plaintiff did not immediately exit the vehicle and told Officer Van Meter that he was getting out but "you won't let me out." Officer Van Meter then physically removed Plaintiff from the vehicle by pulling Plaintiff's wrists and arms. When Officers Van Meter and Luna attempted to apply handcuffs to arrest Plaintiff, it appears that Plaintiff stiffened his right arm while holding a cell phone in his right hand. Officer Van Meter told Plaintiff twice to put his hands behind his back. Plaintiff stated that he had a right to record the interaction and appeared to keep his right hand, which was holding his phone, near his hip rather than put it behind his back as ordered. Officers Luna and Van Meter secured Plaintiff in a double set of handcuffs and escorted him to a patrol car.

While in the patrol car, Plaintiff asked to see a doctor. Plaintiff was eventually transported to Wadley Regional Medical Center for medical evaluation. He was diagnosed with chronic knee pain related to a recent knee surgery and was told to continue taking the medications that he had been regularly taking for knee pain. Plaintiff was then transported to Miller County Sheriff's Office and released to jail staff.

On April 11, 2022, Plaintiff was charged in state court with criminal trespass, failure to submit to arrest, obstructing government operations, and open container with alcohol in vehicle. On March 21, 2024, the charges against Plaintiff were nolle prossed. On April 1, 2025, Plaintiff filed his complaint in this Court, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, and state tort claims of negligence, assault, and battery. ECF No. 1. Defendants argue that they are entitled to summary judgment on all claims.

## II. STANDARD OF REVIEW

The Court may designate a magistrate judge to hear pre- and post-trial matters and to

submit to the Court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1). Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.1(VIII)(C). After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Court may, in its discretion, conduct a *de novo* review of any issue in a report and recommendation. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Court applies a liberal construction when determining whether *pro se* objections are specific. *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995). Here, Plaintiff has filed timely and specific objections, and thus the Court will conduct a *de novo* review.

**III. DISCUSSION**

In the Report and Recommendation, Judge Singleton determined that, from the perspective of a reasonable officer on the scene, Officers Luna and Van Meter's use of force in removing Plaintiff from the vehicle and handcuffing him was objectively reasonable. ECF No. 114, p. 9. Judge Singleton also determined that the incident involved *de minimis* use of force. ECF No. 114, p. 9. Because there was no constitutional violation, Judge Singleton concluded that Defendants were entitled to qualified immunity as to Plaintiff's Fourth Amendment

excessive force claim. ECF No. 114, pp. 5, 10. As to the official capacity claim, Judge Singleton found that, without an underlying constitutional violation, there can be no corresponding official capacity claim. ECF No. 114, p. 11. Judge Singleton also noted that Plaintiff has abandoned his Fifth Amendment claim, Fourteenth Amendment claim, and failure-to-train claim by not responding to Defendants' summary judgment arguments as to these claims. ECF No. 114, p. 5. Judge Singleton further determined that Plaintiff's state tort claims should be dismissed. Plaintiff has filed objections to the Report and Recommendation, which the Court will now address.

**A. Excessive Force (Fourth Amendment)**

Plaintiff claims that Officers Van Meter and Luna used excessive force in detaining him and that Judge Singleton erred in concluding that the use of force was objectively reasonable. "When evaluating a Fourth Amendment excessive force claim under § 1983, [courts] consider 'whether the amount of force used was objectively reasonable under the particular circumstances.'" *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting *Michael v. Trevena*, 899 F.3d 528, 532 (2018)). The circumstances courts consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *McDaniel v. Neal*, 44 F.4th 1085, 1090 (8th Cir. 2022) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Courts "evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight." *Kohorst*, 968 F.3d at 876 (citing *Michael*, 899 F.3d at 532). "The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

"The use of force is least justified against a nonviolent misdemeanant who does not flee or actively resist arrest and poses little threat to officers or the public." *Kohorst*, 968 F.3d at 877 (citing *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019)). "When a suspect is passively resistant, somewhat more force may reasonably be required." *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006). "The failure to follow police instruction may constitute passive resistance." *Kohorst*, 968 F.3d at 877 (citing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)). "An officer is entitled to use force necessary to effect an arrest where a suspect 'at least appears to be resisting.'" *Id.* (citing *Ehlers*, 846 F.3d at 1011).

When Officer Knouse, a TAPD officer, arrived on the scene, she asked Plaintiff to move his vehicle, and he refused. Shortly thereafter, when Officers Van Meter and Luna arrived on the scene, Officer Van Meter approached Plaintiff's vehicle and instructed him to exit the vehicle and step to the front of the vehicle, and Plaintiff refused. Officer Van Meter repeated his command two more times, and Plaintiff told Officer Van Meter that he could not get out because of a knee issue and because he did not have room to do so next to the building.

Officer Van Meter told Plaintiff four times to unlock his vehicle door or his window would be broken. Plaintiff refused to unlock his door. Officer Van Meter then struck the door with his baton and broke the glass. Officer Van Meter requested pepper spray from Officer Luna, who approached Plaintiff's vehicle with the pepper spray. Under the threat of pepper spray, Plaintiff unlocked his door. Officer Van Meter informed Plaintiff he was under arrest and told him to exit the vehicle. Plaintiff, however, did not move. Officer Van Meter then physically removed Plaintiff from the vehicle by pulling his wrists and arms. Plaintiff was holding his phone in his right hand and appeared to stiffen this hand after he was told twice to put his hands behind his back. Officers Van Meter and Luna handcuffed Plaintiff using a double set of handcuffs, and Plaintiff was escorted to a patrol car.

The Court agrees with Judge Singleton that Officers Van Meter and Luna's use of force in removing Plaintiff from the vehicle and handcuffing him was objectively reasonable. Plaintiff was being arrested for criminal trespass, which is not a severe crime, and he was neither attempting to flee nor posing an immediate threat to the safety of others. Plaintiff was, however, passively resisting. Plaintiff failed to follow several police instructions to unlock his vehicle door and exit his vehicle.

While Plaintiff argues in his objections that these instructions were not clear,[2] the video evidence shows otherwise. Officer Van Meter's instructions were more than clear. When Plaintiff asked Officer Van Meter if he was ordering Plaintiff to exit the vehicle, Van Meter responded, "one hundred percent, get out." Officer Van Meter gave Plaintiff several chances to open his vehicle door and warned Plaintiff that his window would be broken if Plaintiff failed to comply. Allowing Plaintiff several chances to comply with instructions shows that Officer Van Meter was trying to temper the amount of force used. Officer Van Meter used the amount of force necessary to break the window so that he could unlock Plaintiff's vehicle. Once the window was broken, Plaintiff unlocked his vehicle.

When instructed to get out of the vehicle, Plaintiff did not immediately do so and told Officer Van Meter that he was not letting Plaintiff get out of the vehicle. Van Meter then used the amount of force necessary to remove Plaintiff from the vehicle. When handcuffing Plaintiff, it appears that Plaintiff was stiffening his right arm and refusing to put it behind his back as instructed twice. Officers Van Meter and Luna then used the amount of force necessary to coerce Plaintiff's right hand into a position that would allow them to get the handcuffs on. The use of force immediately ended after Plaintiff was handcuffed. In sum, the Court finds that

[2] Plaintiff "disputes that he was clearly ordered to exit the vehicle or show his hands before force was escalated." ECF No. 115, p. 10. However, the Court will not accept as true allegations that are blatantly contradicted by the video footage. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Officers Van Meter and Luna resorted to the use of force necessary to effect arrest after Plaintiff repeatedly refused to comply with their commands.

As to Plaintiff's alleged injury, he has not presented any medical records indicating he has suffered any long-term or permanent physical injuries from the arrest. Plaintiff claims that the force used during his arrest aggravated a previous knee injury, but Plaintiff has not offered any evidence to prove that a knee injury occurred because of the amount of force used during the arrest. On the video footage, Plaintiff can be seen walking and standing normally during his arrest and at the hospital. At the hospital, Plaintiff was diagnosed with chronic knee pain and was told to continue taking the medications he had been previously prescribed for his pain. This supports the conclusion that Officers Van Meter and Luna did not use excessive force.

Accordingly, the Court finds that the use of force in removing Plaintiff from the vehicle and handcuffing him was objectively reasonable. Thus, Officers Van Meter and Luna are entitled to qualified immunity from Plaintiff's Fourth Amendment claim of excessive force.[3] *See Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (stating that to resolve a qualified-immunity defense, courts must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right and whether that right was clearly established at the time of a defendant's alleged misconduct).

**B. Abandoned Constitutional Claims (Fifth and Fourteenth Amendment Claims)**

In his complaint, Plaintiff alleges that Defendants violated his Fifth Amendment rights when they used excessive force against him. ECF No. 1, p. 9. Defendants interpreted this claim

---

[3]In his objections, Plaintiff argues that a question of fact remains as to "whether probable cause existed at the moment of arrest" and whether he was "lawfully ordered to leave the property before arrest." ECF No. 115, p. 14. Plaintiff, however, did not allege this distinct Fourth Amendment claim in his complaint, and the Court will not consider it. Further, if Plaintiff is arguing a lack of probable cause in the excessive force context, the Eighth Circuit has stated that "we are inclined to believe that the presence of actual or arguable probable cause is irrelevant to the objective reasonableness of the force used to effect an arrest." *See Habiger v. City of Fargo*, 80 F.3d 289, 298 n.8 (8th Cir. 1996).

as one under the due process clause of the Fifth Amendment. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). "The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions . . . ." *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 (8th Cir. 2009).

Defendants argue that they are entitled to summary judgment on this claim, because Plaintiff has not alleged that the federal government or a federal action deprived him of a right. In response to Defendants' summary judgment motion, Plaintiff states that he "does not abandon the constitutional seriousness of the violations he alleged, but [his] principal opposition to summary judgment is focused on the Fourth Amendment unlawful-seizure and excessive-force issues, the related individual-capacity claims, and the state-law intentional-tort issues." ECF No. 94, p. 8. Judge Singleton found that Plaintiff abandoned his Fifth Amendment claim when he failed to respond to Defendants' summary judgment argument as to this claim.

In his objections, Plaintiff explains that he "had no legal obligation to provide statements, explain himself, or participate in a consensual conversation with officers." ECF No. 115, p. 11. Plaintiff did not make this claim in his complaint. Instead, he alleged that his "rights protected under the Fifth Amendment of the United States Constitution were violated when Defendants . . . used objectively unreasonable force, excessive force, against him . . . ." ECF No. 1, p. 9. Moreover, Plaintiff did not make this argument in his response to Defendants' summary judgment motion. Thus, the Court agrees with Judge Singleton that Plaintiff has abandoned this claim by failing to respond to Defendants' summary judgment argument. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (stating that "failure to oppose a basis for summary judgment constitutes waiver of that argument"). Even if Plaintiff had not

abandoned his claim, he pleads no facts in his complaint that could be construed as supporting a Fifth Amendment claim. Accordingly, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's Fifth Amendment claim.

In his complaint, Plaintiff also alleges that his "rights protected under the Fourteenth Amendment of the United States Constitution were violated when Defendants . . . used objectively unreasonable force, excessive force, against him . . . ." ECF No. 1, p. 10. Defendants argue they are entitled to summary judgment on this claim because Plaintiff has failed to prove his Fourth Amendment excessive force claim. Both the Supreme Court and the Eighth Circuit have held that "the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).

Plaintiff failed to respond to Defendants' argument regarding his Fourteenth Amendment claim, and Judge Singleton concluded that Plaintiff had abandoned this claim. The Court agrees. In his objections, Plaintiff states that he did not intentionally abandon his claim. ECF No. 115, p. 12. Whether intentional or not, "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher*, 558 F.3d at 735. Further, if the Court were to consider Plaintiff's Fourteenth Amendment claim on the merits, it would be denied. "[T]he Fourteenth Amendment does not apply to excessive force claims involving arrests . . . ." *Jackson*, 944 F.3d at 709. Accordingly, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim.

**C. Official Capacity Claims**

Plaintiff sues all Defendants in their official capacities, which are treated as claims against the City of Texarkana. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 154, 1257 (8th

Cir. 2010). However, a municipality cannot be held liable on a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). A municipality's liability must result from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). When a court has determined the summary judgment record does not support any cognizable constitutional violations, there can be no corresponding official capacity claims. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

The Court agrees with Judge Singleton that there can be no municipal liability in this case without an underlying constitutional violation. Plaintiff objects to this determination, but his objection is based on his allegation that a constitutional violation did occur.[4] ECF No. 115, p. 13. Because the Court finds no constitutional violation in this case, Plaintiff's official capacity claims must fail.

**D. State Law Negligence**

Plaintiff alleges that Defendants were "negligent in their excessive use of force against Plaintiff Cherry" and "breached their duty of care." ECF No. 1, p. 11. Defendants argue that they are entitled to summary judgment on this claim because of statutory immunity. Arkansas law states that municipalities are "immune from liability and from suit for damages except to the extent that they may be covered by liability insurance." Ark. Code Ann. § 21-9-301(a). Defendants assert and have offered evidence that they do not maintain liability insurance to cover Plaintiff's claims. ECF No. 100. Plaintiff did not respond to this argument but acknowledged that "Arkansas municipal immunity presents a serious issue for negligence claims

---

[4]Plaintiff objects to the "predicate conclusion" that "no underlying constitutional violation occurred." ECF No. 115, p. 13.

against municipal defendants where [there] is no insurance coverage." ECF No. 94, p. 5. Judge Singleton concluded that, by not responding to Defendants' summary judgment argument, Plaintiff had abandoned his negligence claim. As explained above in relation to Plaintiff's other abandoned claims, the Court agrees with Judge Singleton's conclusion. *See Satcher*, 558 F.3d at 735. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's state law negligence claim.

**E. State Law Assault and Battery**

In his complaint, Plaintiff alleges that Defendants, "through [their] intentional and harmful use of excessive force," "committed battery and assault upon [him]." ECF No. 1, p. 12. Judge Singleton concluded that Defendants are entitled to summary judgment as to Plaintiff's assault and battery claims. The Court agrees. Assault and battery are two distinct claims having distinct elements. Under Arkansas law, "[b]attery is a wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without consent of the victim . . . ." *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (Ark. Ct. App. 2003). Assault is an "intentional attempt by a person, by force or violence, to do an injury to the person of another, or as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery." *Id.*

Arkansas law protects police officers from liability when effectuating an arrest. "[A] law enforcement officer is justified in using nondeadly physical force . . . upon another if the law enforcement officer reasonably believes the use of nondeadly force . . . is necessary to [e]ffect an arrest or prevent the escape from custody of an arrested person unless the law enforcement officer knows that the arrest is unlawful." Ark. Code Ann. § 5-2-610 (a)(1).

As explained above, the Court finds that Officers Van Meter and Luna used a reasonable

degree of force in arresting Plaintiff given his failure to comply with commands and his passive resistance. Because Officers Van Meter and Luna's conduct was justified, their physical contact with Plaintiff was not "wrongful" and thus not battery. *See Anderson v. Driskill*, 550 F. Supp. 3d 596, 631 (E.D. Ark. 2021). For the same reason, Officers Van Meter and Luna "cannot be said to have *attempted* to commit battery sufficient to establish a claim of assault." *See id.* at 632. Accordingly, the Court finds that Defendants Van Meter and Luna are entitled to summary judgment as to Plaintiff's state law assault and battery claims.

## IV. CONCLUSION

Upon *de novo* review of the Report and Recommendation, and for the reasons discussed above, the Court finds that Plaintiff has offered neither fact nor law which would cause the Court to deviate from Judge Singleton's Report and Recommendation. Therefore, the Court overrules Plaintiff's objections and adopts the Report and Recommendation (ECF No. 114) *in toto*. Defendant's Motion for Summary Judgment (ECF No. 90) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 22nd day of October, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge