**IN THE UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF ARKANSAS**

**Texarkana Division**

Ronald Cherry, v.

Pro Se Plaintiff,

Officer John Van Meter (ret.),
Texarkana Arkansas Police Department,
City of Texarkana, Arkansas,
Officer Christine Knouse,
Officer Marcos Luna,
DOUBLE H. BURGER COMPANY, LLC, d/b/a
Whataburger #475

Case No. 4:25-cv-4023

Defendants.

## PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT

### I. INTRODUCTION AND LEGAL STANDARDS

The central question is whether the Court's October 22, 2026 summary-judgment order (ECF No. 123) resolved material factual disputes against Plaintiff when deciding whether Officer John Van Meter's window-breaking, threatened pepper spray, forced extraction, and subsequent handcuffing were objectively reasonable. Plaintiff requested a jury trial in ECF No. 1; he does not claim that this request prevents judgment under Rule 56. He respectfully asks that genuine disputes of material historical fact, supported by the existing record, be evaluated under the standard favoring the nonmoving party and submitted to an impartial jury if the claims remain legally viable. Rule 59(e) permits correction of a manifest error of law or fact, not a repetition of arguments or an automatic new claim. Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998); Nordgren v. Hennepin County, 96 F.4th 1072 (8th Cir. 2024). At summary judgment, the court does not weigh credibility or resolve competing reasonable inferences from genuinely disputed material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000); Tolan v. Cotton, 572 U.S. 650, 656–60 (2014). A video may eliminate an account blatantly contradicted by it; it does not eliminate other disputes that it does not conclusively resolve. Scott v. Harris, 550 U.S. 372, 380–81 (2007).

## II. THE WHATABURGER DISMISSAL AND ALTERNATIVE SERVICE RELIEF

Plaintiff sued the operating business, Whataburger #475, not its owners individually. ECF No. 106 identifies the operator as Double H Burger Company, LLC and records a sheriff's delivery of the summons and Complaint to Ms. Cannon, a manager at the restaurant, on April 8, 2025. Individual service on every LLC owner was unnecessary if the entity was served through a person authorized by Fed. R. Civ. P. 4(h)(1) or Ark. R. Civ. P. 4(f)(6). The Arkansas rule expressly provides for service on a qualifying manager of a manager-managed LLC, a managing or general agent of the LLC, or another person properly authorized. The distinction is between managing the LLC or acting as its qualifying agent and merely holding a supervisory position at one restaurant. A managerial title does not alone prove authority to accept summons, and the service challenger must address the actual requirements of the governing rule. The Eighth Circuit discussed Arkansas's functional managing-agent standard in Bell v. Pulmosan Safety Equipment Corp., 906 F.3d 711, 718 (8th Cir. 2018). That decision cited Lyons v. Forrest City Machine Works, Inc., 301 Ark. 559, 785 S.W.2d 220 (1990), and May v. Bob Hankins Distributing Co., 301 Ark. 494, 785 S.W.2d 23 (1990): a person with meaningful discretion over business operations or an office and adequate responsibility to transmit legal papers to corporate decisionmakers may qualify. Bell itself found service invalid when process went through a doorman who was not employed by or an agent of the corporation; it does not make every site manager an authorized recipient. Unlike Bell's unrelated doorman, Ms. Cannon worked at the actual operating restaurant. Whether she had the requisite discretion or authority is not established by that distinction alone. The important facts are her responsibilities over business operations, employees, business correspondence and reporting, her duty to forward legal notices, and the LLC's own management structure. The company's affidavit denying her express authority is evidence but does not replace application of the distinct managing-agent category. See also Syoboda v. Family Stops USA, LLC, 2026 Ark. App. 391 (holding service on a cashier on duty did not satisfy the LLC rule). Alternatively, even if Ms. Cannon was not a qualifying agent, Fed. R. Civ. P. 4(m) permits an order allowing proper service within a specified time instead of immediate dismissal. Kurka v. Iowa County, 628 F.3d 953, 957–59 (8th Cir. 2010), recognizes the district court's discretion, although it affirmed dismissal there. Watson v. Arrow Senior Living, No. 25-2930 (8th Cir. Mar. 6, 2026) (unpublished), vacated a service dismissal where that discretion was not considered. Plaintiff attempted service promptly, and the LLC received actual notice and appeared through counsel; those factors may support an extension but cannot retroactively cure defective process. ECF No. 106 also recognized a defect in serving the LLC's motion on Plaintiff. He seeks reconsideration of whether he should have been allowed to establish the manager's authority or complete corrective service, and an express ruling on any later pending rejoinder request. The prior dismissal WITHOUT PREJUDICE adjudicated no substantive claim against the LLC. The court's disposition of Whataburger and the officer claims are procedurally different. Dismissal of Double H. Burger Company, LLC was without prejudice and based on service, not the merits of the underlying customer dispute. Plaintiff's later request to rejoin may require post-judgment relief before a party can be added; the mere pendency of that

request cannot be assumed to postpone the notice-of-appeal deadline or a separate limitations period. Plaintiff seeks a ruling on the actual pending filing, if any, and clarification of whether the final judgment was intended to adjudicate claims against an entity already dismissed. This request does not excuse the initial burden to prove service, nor does it establish the LLC acted jointly with police for purposes of Section 1983. The business's alleged role nevertheless remains important factual context for what the officers were told about permission to remain.

## III. THE ACTUAL DISPUTE: LEAVING THE DRIVE-THROUGH LINE VERSUS LEAVING THE PROPERTY

The original Complaint (ECF No. 1, paragraphs 13–28) alleges that Plaintiff disputed an incorrect food order, encountered insulting language, inspected or photographed his food, and remained at the window while seeking a resolution. He does not deny that vehicles were delayed or claim an unlimited right to occupy a drive-through. But paragraph 21 describes an employee offering to let him go around the drive-through again or relocate, and paragraph 28 alleges Knouse told an employee that Plaintiff was merely checking the order and would finish shortly. Plaintiff identifies a comparable statement by an employee on a body-camera recording, subject to verification of the actual audio. These matters support his account of a disagreement over moving the vehicle, not necessarily a clear revocation of permission to be at the business. Defendants' own ECF No. 91, paragraph 49, describes Knouse directing Plaintiff to leave the 'drive-through lane'; paragraph 51 describes her report that he refused to leave 'the line.' Paragraph 52 states she told Van Meter that Plaintiff was refusing to leave and identify himself. Defendants also assert that an employee asked Plaintiff to leave the restaurant property, which Plaintiff disputes. Both accounts must be considered. A direction to circle back through a lane may coexist with a later demand to depart; the decisive questions are exactly who said what, when, whether the speaker had authority, and what Plaintiff and the officers understood. Under Ark. Code Ann. §§ 5-39-101(4)(A)-(B) and 5-39-203(a), criminal trespass involves purposely entering or remaining unlawfully. For premises otherwise open to the public, the statute discusses a lawful order not to enter or remain personally communicated by the owner or an authorized person. Plaintiff does NOT argue that a person must leave and return before ordinary criminal trespass can occur: remaining after lawful withdrawal of permission may suffice. He disputes whether such an instruction preceded the force, as opposed to a request to move along the lane. Ark. Code Ann. § 5-39-304 concerns a distinct notice-and-reentry setting and does not add a universal reentry element to § 5-39-203. Police have authority to investigate reported crimes on private property, and Van Meter did not personally have to be the restaurant's agent or order Plaintiff to leave. The material question is what reliable information established a lawful basis and when the officer received it.

## IV. KNOUSE'S EARLIER "NO CRIME" ACKNOWLEDGMENT AND WHAT CHANGED

Paragraph 27 of ECF No. 1 alleges that Plaintiff said he had committed no crime and Knouse acknowledged that statement. Plaintiff's filed description of Knouse's body-camera recording places the response 'I know you haven't' around 1:15. The actual video and context, not an unverified transcript, control. An officer's earlier assessment does not mean an offense could not arise later or that a witness could not supply probable cause. Yet the statement is relevant to what Knouse initially knew. Plaintiff maintains that before Van Meter arrived he committed no intervening assault, threat, or attempted flight beyond the ongoing disagreement and refusal to move, and asks what new factual information materially changed the situation. Plaintiff contends that Van Meter later directed Knouse to ask whether Whataburger wanted Plaintiff removed. If the video supports that timing, the inquiry matters to what was known before the window-breaking. It is not conclusive proof of no earlier probable cause; Knouse may have already received a reliable complaint. Beck v. Ohio, 379 U.S. 89, 91 (1964), requires consideration of facts known at arrest, while Devenpeck v. Alford, 543 U.S. 146, 152–55 (2004), recognizes objective probable cause for any supported offense, whether or not named by the officer. Plaintiff therefore asks the Court to examine the precise substance and timing of Knouse's report, any authorized notice from the restaurant, and whether the recorded evidence resolves the competing versions. Plaintiff recognizes that an employee's invitation to circle back might coexist with a later order by an authorized person to leave entirely, and that Knouse's initial acknowledgment cannot foreclose later probable cause. But the timing and exact words matter: a refusal to leave the drive-through lane is not necessarily a refusal to leave the premises. Plaintiff asks whether the recordings and reliable reports conclusively resolve those competing accounts or leave material historical disputes affecting the suspected offense and the Graham severity factor. ECF No. 91 repeatedly uses lane-related language, while ECF No. 123 characterizes refusal to leave the business more broadly.

## V. INITIAL REQUEST FOR VOLUNTARY CONVERSATION; NO TRAFFIC STOP

ECF No. 123 at 2–3 states that Van Meter initially directed Plaintiff to exit 'to have a discussion.' Plaintiff's contemporaneous understanding was that Van Meter wanted a consensual conversation, not that he had already placed Plaintiff under arrest. Knouse had earlier acknowledged Plaintiff's statement that he had committed no crime; Plaintiff contends no intervening threat, assault, or flight had occurred, and Van Meter initially announced no arrest. The parties could already hear each other through the driver's-side window. Plaintiff therefore declined the proposed conversation rather than knowingly refusing an announced arrest. This was not a traffic stop initiated for a motor-vehicle violation. Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977), and Maryland v. Wilson, 519 U.S. 408 (1997), do not themselves authorize an exit order whenever police want to talk to a parked motorist. Independent grounds for detention or arrest may exist, but must be identified rather than inferred from those traffic-stop cases. The law distinguishes permission to ask questions from power to demand answers. Florida v. Royer, 460 U.S. 491, 497–98 (1983) (plurality); Florida v. Bostick, 501 U.S. 429, 434–37 (1991) (refusal to cooperate, without more, does not justify detention). Even where an officer has

grounds for a brief investigative detention, the Supreme Court has explained that the officer may ask questions but the detainee is not ordinarily obliged to respond. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Thus, even if Van Meter was investigating a possible trespass, Plaintiff's refusal to TALK was not by itself proof of an offense or authority to break the window. Plaintiff's concern about incriminating statements implicates Fifth Amendment principles, but the Fifth Amendment does not excuse disobedience of independently lawful orders or establish a new claim in this motion; noncustodial silence may also raise questions of express invocation. Salinas v. Texas, 570 U.S. 178 (2013). The stronger claim is objective Fourth Amendment justification, not an unproven hidden motive. Whren v. United States, 517 U.S. 806 (1996). Plaintiff acknowledges the Court's specific finding that Van Meter later responded, 'one hundred percent, get out,' when asked whether he was ordering Plaintiff out. ECF No. 123 at 7. That later, clear directive cannot be erased from the record, but neither does its clarity alone determine whether detention or the window-breaking was lawful and proportionate. The Court's chronology shows that Van Meter broke the window and threatened pepper spray before announcing arrest. Formal advance announcement is not invariably required, and refusal of a lawful exit order can justify reasonable force. Plaintiff asks whether the objectively known facts supported compulsion at the time and whether his knee limitations, lack of threat or flight, and the alternatives available made that degree of force unreasonable. Later handcuffing conduct cannot retroactively justify earlier force.

## VI. RAPID ESCALATION, KNOWN KNEE LIMITATIONS, AND THE OFFICER'S DIRECT VIEW

Plaintiff's previously filed timeline identifies approximately 1:02 as Van Meter's arrival, 1:16 as the initial exit-and-talk request, 1:46 as Plaintiff's request for a supervisor, and 1:48 as the beginning of the window-breaking—about 46 seconds after arrival. The timestamps remain subject to confirmation against the original recording. ECF No. 91, paragraph 55, and ECF No. 123 at 2, 6, acknowledge that Plaintiff told Van Meter of his knee problem and the restricted space beside the vehicle. Plaintiff contends that this explanation could affect whether delayed compliance was caused by physical difficulty rather than solely willful resistance. Van Meter stood directly outside the driver's-side window and, according to Plaintiff, could see Plaintiff seated without an aggressive gesture or weapon threat. The Court itself found no attempted flight and no immediate threat, and called criminal trespass nonsevere. ECF No. 123 at 7. Plaintiff does not deny repeated commands to exit or unlock the door; those commands support the defense. But a reasonable officer's awareness of Plaintiff's mobility explanation, close vantage point, absence of immediate danger, available exit space, and time for clarification were relevant to proportionality. The Fourth Amendment mandates no fixed de-escalation script or unconditional option to drive away when detention is lawful. Plaintiff asks whether a less intrusive safe means of compliance was reasonably available. The City's General Order 1102.03, Response to Resistance (ECF No. 115-1), provides context on proportionality and de-escalation but does not itself define the constitutional standard. Plaintiff asks the Court not to treat breaking the window

as incidental property damage: the officer struck glass beside an occupied vehicle to gain access. That force differs from later handcuffing force. Even with lawful grounds to arrest, the need for this initial escalation must be judged when it occurred. Warnings and a clear exit order may favor the defense, but do not themselves show that breaking glass was proportionate to the circumstances. Graham, 490 U.S. at 396. The Fourth Amendment does not mandate the least intrusive tactic; it does require objective reasonableness. The Court's findings of no flight or immediate threat distinguish this encounter from one involving an armed, advancing, or assaultive suspect.

## VII. PRE-APRIL 2022 EIGHTH CIRCUIT FORCE AUTHORITIES

The Court relied on Kohorst v. Smith, 968 F.3d 871 (8th Cir. 2020), Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006), and Ehlers v. City of Rapid City, 846 F.3d 1002 (8th Cir. 2017), for the principle that refusing lawful commands may constitute passive resistance and justify some force. Plaintiff acknowledges those holdings. He does not equate himself with a person who complied immediately. But those decisions also require consideration of the particular resistance, the danger presented, and the amount and timing of force. Wertish involved dangerous driving and an extended failure to stop; Kohorst and Ehlers involved more apparent resistance during attempted restraint. Kelsay v. Ernst, 933 F.3d 975 (8th Cir. 2019) (en banc), likewise limits overly general definitions of clearly established law. Plaintiff seeks a fact-specific rather than categorical inquiry. Several Eighth Circuit decisions predating the April 10, 2022 encounter show why that inquiry matters. Mitchell v. Kirchmeier, 28 F.4th 888 (8th Cir. Mar. 14, 2022), allowed an excessive-force claim to proceed where officers allegedly fired beanbag rounds at a nonviolent person accused of trespass and obstruction who was not threatening, fleeing, or resisting arrest. Mitchell involved different force and arose on a motion to dismiss; it is not dispositive here. Shannon v. Koehler, 616 F.3d 855 (8th Cir. 2010), affirmed denial of qualified immunity where an officer allegedly used serious force against a nonthreatening person who argued but did not actively resist. Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009), denied qualified immunity for Tasering a nonviolent woman with little threat or flight risk who refused to end a call to 911. Here pepper spray was threatened, not deployed, and the repeated exit commands are a meaningful distinction. Rohrbough v. Hall, 586 F.3d 582 (8th Cir. 2009), and Copeland v. Locke, 613 F.3d 875 (8th Cir. 2010), demonstrate that minor or protective movements following an officer's initial force may require careful factual assessment rather than automatic classification as violent resistance. The Court described Plaintiff's apparent stiffening of an arm holding his phone during the later handcuffing. That later act could bear on handcuffing but not retrospectively justify the earlier window-breaking. Jackson v. Stair, 944 F.3d 704, 711–13 (8th Cir. 2019), assessed successive Taser applications separately, affirming some and reversing summary judgment on another; this supports distinct scrutiny of (1) window-breaking and threatened spray, (2) extraction, and (3) handcuffing rather than one global finding of reasonableness. Graham v. Connor, 490 U.S. 386, 396 (1989), requires evaluation of offense severity, immediate threat, and resistance or flight, from the perspective of a reasonable officer.

Barnes v. Felix, 605 U.S. 73 (2025), explains why preceding circumstances matter, but was decided after the incident and cannot independently establish clearly established law in April 2022. Setchfield v. Ronald, 109 F.4th 1084 (8th Cir. 2024), and Westwater v. Church, 60 F.4th 1124 (8th Cir. 2023), are later examples, not sources of retroactive notice. The pre-incident cases cited above must be applied with their actual factual differences and the contrary cases the Court relied upon. Each stage requires its own assessment; later alleged resistance cannot retroactively excuse earlier force. The Court described Plaintiff apparently stiffening his right arm while holding a phone during handcuffing. Even if that justified some cuffing force, it occurred after the window-breaking and door opening. Conversely, earlier clear warnings and refusal to unlock favor the defense when assessing the window. Jackson requires attention to what officers reasonably perceived at each stage, not a blanket ruling for either side. Saying Van Meter used the force necessary to BREAK the window does not establish that breaking it was constitutionally necessary. The absence of flight, threat, and the known knee and exit-space limitations remain relevant. Qualified immunity also calls for two analytically separate questions: whether the plaintiff-favorable version establishes an unreasonable seizure or use of force, and whether the specific right was sufficiently established as of April 10, 2022 to give a reasonable officer fair warning. Pearson v. Callahan, 555 U.S. 223 (2009). An incorrect application of Rule 56 to disputed historical facts can affect both questions. Tolan, 572 U.S. at 656–60. Plaintiff does not contend that the broad proposition 'excessive force is unconstitutional' alone defeats immunity. His argument is narrower: existing Eighth Circuit decisions had warned against substantial force where the suspected offense was minor, the person posed no immediate danger or realistic flight risk, and disputed noncompliance could be understood without physical aggression. Those cases require careful comparison with the circumstances the officer actually encountered, including repeated commands and any reasonable perception of resistance. The issue is not whether another judge might have preferred a different tactic, but whether the force was outside the range of objective reasonableness in light of the specific facts and preexisting precedent. Plaintiff further disputes treating the incident as merely minimal force because officers obtained control after the window was broken and no new permanent physical injury was diagnosed. The encounter involved forcibly breaking glass beside an occupied SUV, threatening chemical spray, pulling Plaintiff from his seat, and securing him in two sets of handcuffs. Those measures are not necessarily unconstitutional; their objective intrusiveness and the governmental need must be evaluated together. The absence of serious lasting injury is relevant, as Chambers explains, but it does not replace that inquiry. Nor does Plaintiff assert that a refusal to open the locked vehicle door is factually identical to passive silence or argument. The defense may rely upon refusal of repeated clear orders; Plaintiff relies upon the absence of a threat, his explanations of physical difficulty, and the rapid escalation. Which genuinely disputed facts the recordings resolve should be identified, and all remaining reasonable plaintiff-favorable inferences considered before legal judgment is entered.

## VIII. FULL VIDEO CONTEXT AND MATTERS FOR A JURY

The Court found Van Meter's commands clear and stated that the recordings contradicted parts of Plaintiff's account. Plaintiff accepts that video can settle what was said or done where it is conclusive. Scott, 550 U.S. at 380–81. But the Court should also address the full footage of Knouse's order-checking remark, the employee's alleged invitation to circle back through the drive-through, the 'leave the line' wording, Knouse's alleged response to the no-crime question, Van Meter's direct view and rapid escalation, Plaintiff's knee and space explanations, and any later inquiry about trespass. Unverified paraphrases are not substitutes for recordings. Video may establish clear orders yet leave materially disputed why the degree of force was reasonably necessary. Plaintiff sincerely asks for the fair operation of Rule 56, not an automatic ruling in his favor. Material historical facts include whether an authorized person withdrew permission to remain, what Knouse communicated to Van Meter, Plaintiff's apparent capacity to comply, whether conduct was threatening or merely noncompliant, and what was observable through the driver's window before force. Only genuine disputes supported by record evidence and material to a viable claim warrant jury resolution. If they remain, an impartial jury—not a judge selecting between two credible versions at summary judgment—should hear all admissible evidence, see the camera perspectives, evaluate witness testimony and credibility, and decide those facts under the Court's legal instructions. Anderson, Reeves, and Tolan. Plaintiff does not confuse differences of personal opinion with disputed material facts or claim that a jury demand defeats a legally proper summary judgment.

## IX. MATERIAL HISTORICAL DISPUTES AND THE REQUEST FOR AN IMPARTIAL JURY

Plaintiff identifies potentially material questions under Rule 56: (1) whether an authorized restaurant representative revoked permission to remain; (2) whether an employee instead offered another circuit of the drive-through; (3) what instruction was personally communicated to Plaintiff; (4) what Knouse knew when she allegedly acknowledged no crime; (5) whether she relayed 'leave the line' or an exclusion from the premises to Van Meter; (6) what new facts, if any, arose; (7) whether knee and wall limitations affected compliance; (8) what Van Meter saw through the driver's window; (9) whether any threat or aggressive movement preceded the glass-breaking; (10) whether safer compliance was reasonably available; (11) the timing of any later request to restaurant staff; and (12) what different camera angles conclusively resolve. Some questions concern unlawful seizure, which the Court found unpleaded; others bear directly on the adjudicated excessive-force claim. Those distinct constitutional theories should not be merged. Even without a separate arrest claim, facts concerning offense severity, danger, mobility, and resistance matter under Graham. The judge determines whether Rule 56 permits trial; when it does, the jury evaluates credibility and disputed historical facts. The Seventh Amendment jury demand in ECF No. 1 does not override summary judgment. Tolan, 572 U.S. at 656–60; Anderson, 477 U.S. at 249, 255.

## X. COUNSELING EVIDENCE AND DAMAGES ARE DISTINCT FROM LIABILITY

The order emphasized that Plaintiff appeared able to walk and lacked proof of lasting physical injury. ECF No. 123 at 8. Those facts may bear on the type and amount of force but do not negate documentation of other harm. ECF No. 113-12 contains Plaintiff's sworn emotional-distress affidavit and a May 13, 2025 letter from Melinda D. Jewell, Licensed Professional Counselor, confirming treatment and that some sessions concerned distress connected to an arrest. The letter does not diagnose PTSD, establish causation conclusively, or quantify damages. Subject to admissibility, it supports that counseling occurred. Carey v. Piphus, 435 U.S. 247 (1978), and Memphis Community School District v. Stachura, 477 U.S. 299 (1986), recognize compensation for proven emotional harm caused by a constitutional violation. Chambers v. Pennycook, 641 F.3d 898, 906–07 (8th Cir. 2011), does not invariably require substantial bodily injury; Wilson v. Lamp, 901 F.3d 981 (8th Cir. 2018), involved documented PTSD in a different case. Injury cannot independently establish liability, but absence of a permanent knee injury should not be used to disregard the existing counseling evidence.

## XI. PRIOR VAN METER LITIGATION AND MUNICIPAL KNOWLEDGE

In Blair v. Meter, No. 4:06-cv-04099, ECF No. 42 (W.D. Ark. Sept. 18, 2008), the court denied summary judgment on certain force claims involving Van Meter and examined disciplinary material. That ruling was not a finding of misconduct. In West v. City of Texarkana, No. 4:06-cv-04020 (W.D. Ark. Mar. 30, 2007), the court rejected municipal liability on its record. Plaintiff does not ask for a propensity inference that Van Meter committed the present acts because of earlier lawsuits, which Fed. R. Evid. 404 generally forbids. Properly admitted pre-incident records may bear on City notice, supervision, or deliberate indifference only if the separate requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978), and the causal connection are satisfied. Post-incident disciplinary matters cannot alone establish earlier knowledge, and a constitutional violation does not automatically make the City liable.

## XII. ORIGINAL FOURTH AMENDMENT PLEADING AND RELATED CLAIMS

Footnote 3 of ECF No. 123 at 8 excluded unlawful arrest because it was not separately alleged. Yet ECF No. 1, paragraphs 26–34, describes the encounter, and paragraph 54 incorporates those facts into the Fourth Amendment count. Erickson v. Pardus, 551 U.S. 89, 94 (2007), calls for liberal construction of pro se pleadings. Plaintiff acknowledges that Count I emphasizes excessive force and Rule 59(e) cannot ordinarily add an omitted claim. He requests review only of whether the original pleading gave fair notice. Related assault and battery claims warrant reconsideration only if the force-justification basis changes. Negligence and other theories face separate grounds for dismissal. Probable cause for arrest and reasonableness of force are distinct. Habiger v. City of Fargo, 80 F.3d 289, 298 n.8 (8th Cir. 1996). The separate Arkansas intentional-tort theories also warrant a precise analysis. The October 22 Order rejected assault and battery because the force was deemed reasonable and thus justified. Ark. Code Ann. § 5-2-610(a)(1) protects nondeadly force when an officer reasonably believes it necessary to effect an

arrest under statutory conditions; it does not necessarily immunize all physically intrusive conduct simply because an arrest occurs. Plaintiff requests reconsideration of those state-law conclusions only if the constitutional or factual basis of the justification ruling is altered. He recognizes that the negligence theory faces Arkansas statutory immunity and that the Court held certain additional constitutional theories insufficiently opposed or preserved. The brief does not convert those independently barred theories into viable claims by rhetoric. It seeks a corrected judgment only as to specific causes of action affected by a demonstrated Rule 59(e) error. Plaintiff does not argue that the restaurant dispute was necessarily noncriminal merely because it originated over food, or that the dismissal of later criminal charges proves a lack of probable cause. A business may revoke permission to remain, and officers may rely on trustworthy reports. The precise dispute is whether a qualifying revocation occurred and was communicated before the relevant seizure or force, and what objectively reasonable force the officers could employ. That issue is separate from Plaintiff's argument that he had no duty to answer voluntary questioning. Both should be evaluated from the existing record, not an assumed refusal to obey every lawful instruction.

## XIII. CONCLUSION AND REQUESTED RELIEF

Plaintiff respectfully requests that the Court alter or vacate judgment to the extent an identified manifest error affects a legally viable claim; reconsider whether the record supports judgment for Van Meter, Luna, and the City under the proper fact-specific force and qualified-immunity standards; address the earlier Whataburger service dismissal and any pending rejoinder request; and restore surviving claims to the jury-trial docket where genuine material factual disputes remain. The request is not that the Court guarantee a plaintiff's verdict or treat all disagreement as material, but that an impartial jury hear the full admissible record rather than having unresolved material events decided against Plaintiff at summary judgment.

Respectfully submitted,

Ronald Cherry
20 BriarRidge Dr.
Texarkana, Arkansas 71854
903-277-6997
Ronlcherry2367@hotmail.com

11-18-2024